IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION
Civil Case No. 1:21-cv-663

| | |
|---|---|
| Z.S., | ) |
|       Plaintiff, | ) |
| v. | ) **COMPLAINT** |
| | ) **(Jury Trial Demanded)** |
| DURHAM COUNTY, | ) |
|       Defendant. | ) |

## INTRODUCTION

Z.S. is a sixteen-month-old toddler with disabilities. Defendant Durham County's Department of Social Services ("Durham DSS") obtained custody of Z.S. in January 2021. Z.S. has been institutionalized at all times since Durham DSS became his custodian.

Placing children with disabilities in institutions far from their home communities behind "the shameful wall of exclusion"[1] is disability-based discrimination. The human cost of Defendant's actions cannot be overstated. It will almost certainly cause lasting harm to deprive a child as young as Z.S. of a home where he can form attachments to stable caregivers during the most critical years of his human development.

Defendant's institutionalization of Z.S. does not comport with national mandates to shift away from relying on institutions to care for children involved in child welfare

---

[1] President George H. Bush, Remarks at the Signing of the Americans with Disabilities Act (July 26, 1990), *available at* https://www.ada.gov/ghw_bush_ada_remarks.html (last visited August 16, 2021).

processes and for people with disabilities. Public entities like Defendant must provide home and community-based care for children with disabilities in its custody rather than institutionalizing them. *See Olmstead v. L.C.*, 527 U.S. 581 (1999) (holding that unnecessary institutionalization constitutes disability discrimination and violates the Americans with Disabilities Act). Defendant's institutionalization of Z.S. violates his rights as a person with a disability under the Americans with Disabilities Act and the Rehabilitation Act.

North Carolina offers comprehensive alternatives to institutional care for children with disabilities through its Medicaid program, including a Medicaid waiver program known as Community Alternatives Program for Children (CAP/C). Defendant should be ordered to act consistent with federal law and obtain home and community-based services for Z.S. and facilitate his deinstitutionalization and return to the community.

## JURISDICTION AND VENUE

1. Plaintiff's claims are made pursuant to Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*, and Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794 *et seq.*

2. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.

3. Declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201, 2202.

4. Venue is appropriate in the United States District Court for the Middle District of North Carolina pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions that gave rise to Plaintiff's claims occurred within this District and Defendant's principal office and place of business is in this District.

## PARTIES

5. Z.S. is a sixteen-month-old child with disabilities.

6. Z.S. has filed a motion contemporaneously with his Complaint seeking the appointment of a Guardian ad Litem to prosecute this action on his behalf.

7. Defendant Durham County is responsible for child welfare services in Durham County, North Carolina.

8. Defendant Durham County's Department of Social Services ("Durham DSS") has legal custody of Z.S.

## STATEMENT OF FACTS

9. Z.S. was born at UNC Hospitals in April 2020. He was born prematurely and with disabilities affecting his kidney, trachea, and blood pressure.

10. In January 2021, Durham DSS filed a Juvenile Petition in state court pursuant to N.C. Gen. Stat. § 7B alleging that Z.S. is a dependent child and seeking custody of him.

11. Z.S. was still hospitalized at UNC Hospitals when Durham DSS filed the petition.

3

12. Durham DSS's petition included a sworn statement that Z.S. was medically stable and had been ready for discharge since at least November 10, 2020.

13. Durham DSS was awarded custody of Z.S.[2]

14. Durham DSS is permitted to place children in its custody in community-based settings including in a home with a parent(s), relative(s), nonrelative kin (an individual who has a substantial relationship to the child), a licensed foster home, or other home authorized by law to provide care.

15. After Durham DSS became Z.S.'s custodian, Z.S. was not discharged to a home in the community and remained at UNC Hospitals for another four months.

16. In early May 2021, Z.S. was transferred from UNC Hospitals to a 30-bed intermediate care facility for individuals with intellectual disabilities ("ICF-IID") known as "Tar River" in Greenville, North Carolina.

17. Tar River is more than one hundred miles from the Durham community where Z.S.'s parents live. Z.S.'s parents do not drive.

18. During the time that Durham DSS has had custody of Z.S., there have been available options for placement in the community that, in conjunction with Medicaid-funded services, could meet Z.S.'s needs.

19. Z.S. remains at Tar River as of the filing of this Complaint.

20. The federal government's Centers for Medicare and Medicaid Services classify ICF-IIDs, like Tar River, as an institution.

---

[2] This action does not challenge or seek to modify the order awarding custody to Durham DSS.

4

Case 1:21-cv-00663-WO-LPA   Document 1   Filed 08/24/21   Page 4 of 13

21. Institutional placements harm children:

> Studies on the impact of these institutional placements on child and youth development have found delays and deviations in young people's physical growth, hormonal development, cognitive and emotional development, and attachment security. Research, conventional wisdom, and youth themselves state that children and adolescents need love and care, supportive and dependable relationships, autonomy and opportunities to fail healthily, safety and stabilization, and adequate opportunities for emotional and social learning. Yet, youth in this study indicated that institutional placements provide none of those elements reliably.[3]

22. Tar River is staffed by paid shift workers who clock in and out every day. Institutions like Tar River cannot foster family relationships or replicate a home environment for the children under their care and likely cannot provide adequate social-emotional caregiver-child interactions.[4]

23. North Carolina offers publicly-funded home and community-based services such as Private Duty Nursing services and the Community Alternatives Program for Children (CAP/C) to provide alternative to institutional care for children with medical needs and permit them to live at home.[5]

---

[3] Sarah Fathallah & Sarah Sullivan, *Away From Home: Youth Experiences of Institutional Placements in Foster Care* at 101 (internal citations omitted) (2021), *available at* https://www.thinkof-us.org/case-studies/away-from-home (last visited August 16, 2021).
[4] *Id.* at 9.
[5] A comprehensive resource of publicly-funded Long-Term Services & Supports (LTSS) and other NC Medicaid benefits can be found online at https://medicaid.ncdhhs.gov/providers/programs-and-services.

5

24. Durham DSS has failed to obtain Medicaid or Medicaid waiver services that would provide medical care Z.S. received at UNC Hospitals and now at Tar River in the community, such as in the home of a relative, nonrelative kin, or foster parents.

25. On information and belief, Z.S. has relatives and nonrelative kin willing to accept Z.S. for placement in their home with appropriate home and community-based services and supports to provide for his needs.

26. On information and belief, Durham DSS places or has the ability to place children with disabilities in foster care homes.

27. The actions of Durham DSS deny Z.S. the opportunity to live in a home with nurturing and stable adults and the opportunity to form attachments.

28. Institutional care is no safer than other placements, is not better at promoting child development, does not achieve better long-term outcomes for children, and is far more costly than community-based care.[6]

29. Early childhood experiences can have lifetime effects;[7] the care and experiences Durham DSS make available to Z.S. now as his custodian is almost certainly determining the quality of the rest of his life and must be addressed immediately.

---

[6] *See* Barth, R.P. (2002). *Institutions vs. Foster Homes: The Empirical Base for the Second Century of Debate*, Chapel Hill, NC: UNC, School of Social Work, Jordan Institute for Families (2002), *available at* https://bettercarenetwork.org/sites/default/files/Institutions%20vs%20Foster%20Homes.pdf (last visited August 16, 2021). *See also About Community Living*, *available at* https://acl.gov/about-community-living (last visited August 16, 2021).

[7] *InBrief: The Science of Early Childhood Development* (Center on the Developing Child, Harvard University) 2007, *available at* https://developingchild.harvard.edu/resources/inbrief-science-of-ecd/.

# FIRST CLAIM FOR RELIEF
# TITLE II OF THE AMERICANS WITH DISABILITIES ACT
# 42 U.S.C. § 12131, *et seq.*

30. Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs as if specifically alleged herein.

31. Title II requires, inter alia, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *See* 42 U.S.C. § 12132.

32. Defendant is a "public entity" as used in Title II of the ADA.

33. Z.S. is a qualified individual with a disability entitled to the protections of the ADA.

34. Child welfare services provided by Durham County's Department of Social Services are services, programs, or activities of a public entity.

35. Title II contains an "integration mandate" requiring public entities to "administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d).

36. Z.S. has been continuously institutionalized at all times while in Defendant's custody; Defendant has administered all of its child welfare services concerning Z.S. in wholly segregated settings in violation of the integration mandate.

37. Title II further provides that public entities may not "[a]fford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others," or "an aid, benefit, or service

that is not as effective in affording equal opportunity" to gain the same result or benefit as provided to others. *See* 28 C.F.R. § 35.130(b)(1)(ii)-(iii).

38. Children in Defendant's custody can be placed in licensed and unlicensed home settings in the community; Z.S. has been denied such placement and has instead been continuously institutionalized while in Defendant's custody in violation of his right to the same community-based child welfare services afforded to other children in Defendant's custody.

39. Z.S. has been continuously placed in institutions since Defendant obtained custody of him, a placement that denies children adequate social-emotional caregiver-child interactions and likely to lead to less positive outcomes for Z.S. than for children Defendant has placed in a community-based setting such as the home of kin or nonrelative kin or foster care.

40. Title II of the ADA requires public entities to make reasonable modifications to its child welfare program to avoid discrimination on the basis of disability. *See* 28 C.F.R. § 35.130(b)(7).

41. Defendant has not made reasonable modifications, if necessary, to provide Z.S. access to community-based child welfare services and placement.

42. Public entities cannot use criteria or methods of administration that discriminate on the basis of disability. *See* 28 C.F.R. § 35.130(b).

43. Defendant discriminates against Z.S. based on disability by relying on criteria or methods of administration in its child welfare services that prioritized or

permitted placement of Z.S. in an institution when, upon information and belief, home and community-based placements and services are available for Z.S.

44. Defendant discriminates against Z.S. based on disability by utilizing methods of administration that prioritize or permit placement of Z.S. in an institution when home and community-based placements and services are available for Z.S.

45. Defendant's failure to obtain home and community-based services and continued institutionalization of Z.S. was done intentionally or with deliberate indifference to his federally protected rights. For example, even after counsel for Z.S. wrote to Defendant informing Defendant that it was violating the ADA by permitting the continued institutionalization of Z.S., Defendant continued to violate the law by transferring Z.S. to Tar River and failing to obtain home and community-based services and facilitating his return to a home in the community.

46. As a result of Defendant's actions, Z.S. has suffered and will continue to suffer irreparable harm: he has suffered and will continue to suffer from discrimination and unequal access to Defendant's child welfare services, deprivation of adults with whom he can form attachments, and injury to his prospects for lifelong success and prosperity.

47. In the absence of injunctive relief, Defendant will continue to institutionalize and deny Z.S. his right to live in the most integrated and effective setting possible.

# SECOND CLAIM FOR RELIEF
## VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973
### 29 U.S.C. § 794, *et seq.*

48. Z.S. incorporates by reference all allegations contained in the preceding paragraphs, as if alleged herein.

49. Section 504 of the Rehabilitation Act mandates that "[n]o otherwise qualified individual with a disability…shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

50. Z.S. is an otherwise qualified individual with disabilities entitled to the protections of the Rehabilitation Act.

51. The Rehabilitation Act defines a "program or activity," in pertinent part, as "all of the operations of a department, agency,…of a State or of a local government…" 29 U.S.C. § 794(b)(1).

52. Child welfare services provided by Defendant through its Department of Social Services are programs or activities.

53. Upon information and belief, Defendant and its Department of Social Services are a recipient of "federal financial assistance" as used in the Rehabilitation Act.

54. The Rehabilitation Act contains an "integration mandate" requiring covered entities to provide aids, benefits, and services that afford people with disabilities "equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level

10

Case 1:21-cv-00663-WO-LPA   Document 1   Filed 08/24/21   Page 10 of 13

of achievement, in the most integrated setting appropriate to the person's needs." 45 C.F.R. § 84.4(b)(2).

55. Z.S. has been continuously placed in institutions since Defendant obtained custody of him, a wholly segregated placement that denies children adequate social-emotional caregiver-child interactions and likely to lead to less positive outcomes for Z.S. than for children Defendant has placed in a community-based setting such as the home of kin or nonrelative kin or foster care.

56. The Rehabilitation Act forbids covered entities from using criteria or methods of administration that discriminate on the basis of disability or which defeat or substantially impair accomplishment of the objectives of the recipient's program or activity. 45 C.F.R. § 84.4(b)(4).

57. Defendant discriminates against Z.S. based on disability by relying on criteria or methods of administration in its child welfare services that prioritize or permit institutional placement of Z.S. when, upon information and belief, home and community-based placements and services are available

58. Defendant defeats or substantially impairs its objective of improving, not hindering, outcomes for children in its custody by permitting Z.S.'s continued placement in a wholly segregated setting that denies children adequate social-emotional caregiver-child interactions and is likely to lead to less positive outcomes for Z.S.

59. Defendant's failure to obtain home and community-based services and continued institutionalization of Z.S. was done intentionally or with deliberate indifference to his federally protected rights. For example, even after counsel for Z.S.

wrote to Defendant informing Defendant that it was violating the Rehabilitation Act by permitting the continued institutionalization of Z.S., Defendant continued to violate the law by transferring Z.S. to Tar River and failing to obtain home and community-based services and facilitating his return to a home in the community.

60. As a result of Defendant's actions, Z.S. has suffered and will continue to suffer irreparable harm: he has suffered and will continue to suffer from discrimination and unequal access to Defendant's child welfare services, deprivation of adults with whom he can form attachments, and injury to his prospects for lifelong success and prosperity.

61. In the absence of injunctive relief, Defendant will continue to institutionalize and deny Z.S. his right to live in the most integrated setting appropriate to his needs and which provides him equal opportunity to reach the same level of achievement as children who are not institutionalized.

## PRAYER FOR RELIEF

WHEREFORE, Z.S. request the Court to provide relief as set forth below:

1. A declaration that Defendant has violated and continues to violate the ADA and the Rehabilitation Act by failing to obtain home and community-based services for Z.S. and permitting Z.S.'s continued institutionalization;

2. A preliminary and permanent injunction prohibiting Defendant from continuing to violate the ADA and the Rehabilitation Act and requiring Defendant to obtain home and community-based services for Z.S. and place him in a home and

community-based setting;

3. Award Z.S. damages to compensate him for the harm he experienced and will experience throughout his lifetime as a result of his institutionalization;

4. An award of Z.S.' reasonable attorney's fees and costs; and

5. Such other and further relief as the Court may deem just and proper.

This 24th day of August, 2021.

Respectfully submitted,

/s/ Holly Stiles
Holly Stiles
holly.stiles@disabilityrightsnc.org
N.C. State Bar No. 38930

Emma Kinyanjui
emma.kinyanjui@disabilityrightsnc.org
N.C. State Bar No. 31450

DISABILITY RIGHTS NC
3724 National Drive, Suite 100
Raleigh, NC 27612
Phone: (919) 856-2195
Fax: (919) 856-2244

ATTORNEYS FOR PLAINTIFF