**IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| Z.S.,<br><br>Plaintiff,<br><br>v.<br><br>Durham County,<br><br>Defendant. | Civil Case No. 1:21-cv-663 |

**STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA**

**Introduction**

The United States of America (the "United States" or the "Government") respectfully submits this Statement of Interest in accordance with 28 U.S.C. § 517[1] to provide its views regarding the applicable pleading requirements for a violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. Specifically, the United States clarifies that: (1) the integration mandate of the ADA and the Rehabilitation Act prohibits discrimination in the form of unnecessary segregation, regardless of the intent of the agency placing individuals with disabilities in institutional settings; (2) there are multiple ways to demonstrate that community placement is appropriate for an individual, only one of

[1] Congress has authorized the Attorney General to send "any officer of the Department of Justice . . . to any . . . district in the United States to attend to the interests of the United States in a suit pending in a court of the United States." 28 U.S.C. § 517.

which is a determination by the public entity's treatment professionals; and (3) a plaintiff who alleges that access to an existing community-based service will prevent unnecessary institutionalization has alleged a plausible reasonable modification under the ADA and the Rehabilitation Act. Plaintiff has adequately alleged a violation of the integration mandate. Therefore, Defendant's Motion to Dismiss should be denied.

## **Interest of the United States**

The United States submits this Statement of Interest because this litigation implicates the proper interpretation and application of Title II of the ADA and Section 504 of the Rehabilitation Act. As the federal agency charged with enforcement and implementation of Title II of the ADA, the Department of Justice has an interest in supporting the proper and uniform application of the ADA, in furthering Congress's intent to create "clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities," and in furthering Congress's intent to reserve a "central role" for the federal Government in enforcing the standards established in the ADA. 42 U.S.C. §§ 12133-12134, 12101(b)(2), 12101(b)(3).

The United States also has responsibility for enforcing and implementing Section 504 of the Rehabilitation Act. Congress directed all federal agencies to issue regulations implementing Section 504 with respect to the programs or activities to which they provide federal financial assistance. *See* 29 U.S.C. § 794(a). The Department of Justice is charged with coordinating federal agencies' implementation and enforcement of

Section 504. *See* 28 C.F.R. Part 41; Exec. Order No. 12,250, 45 Fed. Reg. 72,995 (Nov. 2, 1980); *see also* 28 C.F.R. § 0.51(b)(3). The Department of Justice also has authority to enforce Section 504. *See* 29 U.S.C. § 794(a).

Because the Department of Justice is the agency assigned to promulgate regulations under the law, it is afforded deference in its interpretation of the ADA. 42 U.S.C. § 12134(a); 28 C.F.R. Part 35 (delegating to the Department of Justice authority to promulgate regulations under Title II); *see, e.g., City of Arlington v. Fed. Commc'ns Comm'n*, 569 U.S. 290, 296 (2013) ("Statutory ambiguities will be resolved, within the bounds of reasonable interpretation, not by the courts but by the administering agency.").

**Plaintiffs' Factual Allegations**

Plaintiff Z.S. is a 16-month-old child with disabilities. Compl. ¶¶ 5. Defendant Durham County took custody of Z.S. several months after Z.S.'s premature birth and hospitalization at UNC Hospitals. *Id.* ¶¶ 9, 13, 15, 16. The County kept Z.S. at UNC Hospitals for several more months after it gained custody, although it had previously determined that Z.S. was medically stable. *Id.* ¶¶ 12, 15. The County then discharged Z.S. to Tar River, a 30-bed intermediate care facility for individuals with intellectual disabilities. *Id.* ¶ 16.

Plaintiff claims that Defendant "discriminates against Z.S. based on disability by relying on criteria or methods of administration in its child welfare services that prioritized or permitted placement of Z.S. in an institution when, upon information and

belief, home and community-based placements and services are available for Z.S." *Id.* ¶ 43. According to the Complaint, "there have been available options for placement in the community that, in conjunction with Medicaid-funded services, could meet Z.S.'s needs." *Id.* ¶ 18. The County has the ability to place children with disabilities in its custody in foster care homes. *Id.* ¶¶ 14, 26. Further, Z.S. "has relatives and nonrelative kin willing to accept Z.S. for placement in their home with appropriate home and community-based services and supports to provide for his needs." *Id.* ¶ 25. Finally, Plaintiff claims that Medicaid-funded home and community-based services are available to children with medical needs as an alternative to institutional care in North Carolina, but the County has failed to obtain such services for Z.S. *Id.* ¶¶ 23-24.

The County continues to institutionalize Z.S. after counsel for Z.S. informed the County that it was violating the ADA. *Id.* ¶¶ 19, 45. Plaintiff seeks declaratory, injunctive, and compensatory relief. *Id.* at 12-13.

**Statutory and Regulatory Background**

Congress enacted the ADA "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). It found that, "historically, society has tended to isolate and segregate individuals with disabilities" and that "individuals with disabilities continually encounter various forms of discrimination, including . . . segregation." *Id.* §§ 12101(a)(2) and (5). Congress determined that "the Nation's proper goals regarding

individuals with disabilities are to assure equality of opportunity, full participation, *independent living*, and economic self-sufficiency for such individuals." *Id.* § 12101(a)(7) (emphasis added). Title II of the ADA prohibits disability discrimination in public services: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Id.* § 12132.

Congress directed the Attorney General to promulgate regulations to implement Title II. 42 U.S.C. § 12134. These regulations require public entities, *inter alia*, to "administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d) ("the integration mandate"). The "most integrated setting" is one which "enables individuals with disabilities to interact with nondisabled persons to the fullest extent possible." *Id.* Part 35, App. B at 711 (2020). The regulations also require public entities to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." *Id.* § 35.130(b)(7)(i).

In *Olmstead*, the Supreme Court held that, under the ADA and its regulations, "unjustified institutional isolation of persons with disabilities is a form of discrimination." *Olmstead v. L.C.*, 527 U.S. 581, 600 (1999). The Court reasoned that

"institutional placement of persons who can handle and benefit from community settings perpetuates unwarranted assumptions that persons so isolated are incapable or unworthy of participating in community life." *Id.* The Court concluded that individuals with disabilities are entitled to community-based services "when the State's treatment professionals determine that such placement is appropriate, the affected persons do not oppose such treatment, and the placement can be reasonably accommodated, taking into account the resources available to the State and the needs of others with . . . disabilities." *Id.* at 607.

States must make the requested modifications unless they can demonstrate the modifications' unreasonableness by establishing that the modifications would fundamentally alter the services they provide. The Supreme Court explained, "Sensibly construed, the fundamental-alteration component of the reasonable-modifications regulation would allow the State to show that, in the allocation of available resources, immediate relief for the plaintiffs would be inequitable, given the responsibility the State has undertaken for the care and treatment of a large and diverse population of persons with . . . disabilities." *Id.* at 604.

Congress enacted Section 504 to "enlist[] all programs receiving federal funds in an effort 'to share with handicapped Americans the opportunities for an education, transportation, housing, health care, and jobs that other Americans take for granted.'" *School Bd. of Nassau Cnty., Fla. v. Arline,* 480 U.S. 273, 277 (1987) (quoting 123 Cong. Rec. 13515 (1977) (statement of Sen. Humphrey)). Section 504 provides that "[n]o

otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794(a). The Department of Justice's regulations coordinating the implementation of Section 504 require recipients of federal funds to "administer programs and activities in the most integrated setting appropriate to the needs of qualified handicapped persons." 28 C.F.R. § 41.51(d); *cf.* 45 C.F.R. § 84.4(b)(2) (Department of Health and Human Services regulations stating that "aids, benefits, and services, to be equally effective . . . must afford handicapped persons equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement, in the most integrated setting appropriate to the person's needs."). Under these regulations, "[a] recipient may not, directly or through contractual or other arrangements, utilize criteria or methods of administration . . . [t]hat have the effect of subjecting qualified handicapped persons to discrimination on the basis of handicap." 28 C.F.R. § 41.51(b)(3)(i).

The Fourth Circuit has held that Title II of the ADA and Section 504 of the Rehabilitation Act "impose the same integration requirements." *Pashby v. Delia*, 709 F.3d 307, 321 (4th Cir. 2013) (citing *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003)).

## Discussion

### I. The ADA and the Rehabilitation Act Prohibit Discrimination in the Form of Unnecessary Segregation

Defendant argues that Plaintiff has failed to state a claim under the integration mandate of Title II and Section 504 because Plaintiff has not alleged facts regarding Defendant's motive in placing Plaintiff in an institution. *See* Def.'s Br. in Supp. of Mot. to Dismiss ("Def.'s Br.") at 6-7. Contrary to Defendant's contention, violations of the integration mandate constitute discrimination on the basis of disability regardless of whether a public entity acted with discriminatory intent. Title II's integration mandate is a requirement to "administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d). Recognizing this affirmative obligation, the Supreme Court held in *Olmstead* that unnecessary segregation is itself a form of discrimination under Title II. 527 U.S. at 597-98, 600-01. By virtue of their segregation, people with disabilities must "relinquish participation in community life they could enjoy given reasonable accommodations, while persons without mental disabilities can receive the medical services they need without similar sacrifice." *Id*. at 601.

Because the discrimination is inherent in the unnecessary segregation, courts have explained that plaintiffs need not separately demonstrate an intent to discriminate when alleging a violation of the integration mandate. *See id.; see also Williams v. Wasserman*, 164 F. Supp. 2d 591, 630 (D. Md. 2001) (finding that plaintiffs could show

discrimination under Title II "by showing that they remained unjustifiably institutionalized despite their eligibility for community-based treatment," without imposing an intent requirement). Courts do not look back to assess the motive of the placing agency when determining whether there has been a violation of the integration mandate. The court in a recent matter explained, "Where a defendant fails to meet this affirmative obligation [to make reasonable modifications and serve people in the most integrated setting appropriate], the cause of that failure is irrelevant." *United States v. Mississippi*, 400 F. Supp. 3d 546, 554 (S.D. Miss. 2019) (quoting *Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 454-55 (5th Cir. 2005)). Similarly, analyzing a matter under Section 504, another court concluded "that the Rehabilitation Act's 'solely by reason of . . . disability' requirement need not be separately analyzed in cases alleging a violation of the integration mandate because the alleged discrimination—undue isolation—stems from a failure to satisfy an affirmative duty, regardless of discriminatory intent." *Guggenberger v. Minnesota*, 198 F. Supp. 3d 973, 1032 (D. Minn. 2016). This is consistent with *Olmstead* itself. Concurring in the *Olmstead* decision, Justice Kennedy noted that plaintiffs could show discrimination even without animus. 527 U.S. at 611 (Kennedy, J., concurring).[2]

[2] The case Defendant cites does not hold that intent is required to state a claim for discriminatory segregation. Rather, it is an ADA Title III case that turned on whether an accommodation sought by a medical school student was reasonable. *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 465-67 (4th Cir. 2012). The court quoted, in dicta, the causation standard for ADA claims for exclusion from a program, which includes disability as a motivating factor. *Id*. at 461-62. However, the case did not turn

The Department of Justice has issued guidance clarifying that a violation of the integration mandate under Title II does not require a showing of intentional discrimination. U.S. Dept. of Justice, Statement of the Department of Justice on Enforcement of the Integration Mandate of Title II of the Americans with Disabilities Act and *Olmstead v. L.C.*, https://perma.cc/K2HP-JW27 ("DOJ *Olmstead* Statement"), at Q & A No. 3. As the DOJ *Olmstead* Statement explains, "an *Olmstead* claim is distinct from a claim of disparate treatment or disparate impact and accordingly does not require proof of those forms of discrimination."[3] *Id.* Thus, Plaintiff need not allege discriminatory intent to establish a violation of the integration mandate.

Similarly, Defendant's assertion that Plaintiff must allege bad faith or gross misjudgment to state a claim under Title II or Section 504, *see* Def.'s Br. at 7, is unsupported by law. As discussed above, intent is not relevant to a determination of liability under *Olmstead*. *See Olmstead*, 527 U.S. at 597-98, 600-01. Further, it is not relevant to an award of prospective injunctive relief. As one court explained, "Though a plaintiff seeking compensatory money damages under Title II must show intentional discrimination on the basis of disability, a plaintiff seeking prospective injunctive relief is not required to make this showing." *Frazier v. Kelley*, 460 F. Supp. 3d 799, 844 (E.D.

---

on discriminatory intent and, in any case, does not state the standard for an integration claim. *See id*. at 465-67.

[3] The Fourth Circuit relied, in part, on the DOJ interpretation of the ADA in *Pashby v. Delia*. 709 F.3d 307, 322 (4th Cir. 2013).

Ark. 2020) (citing *Meagley v. City of Little Rock*, 639 F.3d 384, 388-89 (8th Cir. 2011)). While intent may be relevant to a determination of compensatory damages under Title II and Section 504, deliberate indifference is the standard that applies in that circumstance. *Adams v. Montgomery Coll. (Rockville)*, 834 F. Supp. 2d 386, 393-94 (D. Md. 2011). Defendants demonstrate deliberate indifference "when they have notice of the potential risk of their decision, and clearly refuse the accommodation knowingly." *Adams*, 834 F. Supp. 2d at 394 (quoting *Proctor v. Prince George's Hosp. Ctr.*, 32 F. Supp. 2d 820, 829 (D. Md.1998)) (brackets omitted).

To support its position, Defendant relies on a subset of cases with overlapping ADA and Individuals with Disabilities Education Act (IDEA) claims that are irrelevant to the case at hand. The cited cases relate to the provision of school-based educational services for children with disabilities, a limited category of claims, to which some courts have applied a heightened legal standard. *See O.V. v. Durham Pub. Schs. Bd. of Educ.*, No. 1:17cv691, 2018 U.S. Dist. LEXIS 96862, at *73 (M.D.N.C. June 6, 2018), recommendation adopted, No. 1:17cv691, 2018 U.S. Dist. LEXIS 114399 (M.D.N.C. July 10, 2018) ("in 'the context of education of handicapped children,' a plaintiff must show 'either bad faith or gross misjudgment' to establish a Section 504 (or ADA) violation."); *Charlotte-Mecklenburg Bd. of Educ. v. B.H. ex rel. C.H.*, No. 3:07cv189, 2008 U.S. Dist. LEXIS 83347, at *15 (W.D.N.C. Sept. 24, 2008). This heightened standard is employed because courts prefer to defer to schools in disagreements over

special education services. The heightened review standard disincentivizes a flood of dissatisfied parents from engaging court resources to resolve differences with schools.

However, courts have declined to extend the application of the bad faith or gross misjudgment standard to Title II claims more broadly. *See, e.g.*, *S.B. ex rel. A.L. v. Bd. of Educ. of Harford Cnty.*, 819 F.3d 69, 75-76 (4th Cir. 2016) (applying deliberate indifference standard, rather than bad faith or gross misjudgment, in case of disability-related harassment); *Shirey ex rel. Kyger v. City of Alexandria Sch. Bd.*, 229 F.3d 1143 (Table), at *4-5 (4th Cir. 2000) (declining to apply bad faith or gross misjudgment standard to case regarding reasonable modification in school evacuation procedures); *Godbey v. Iredell Mem'l Hosp., Inc.*, No. 5:12–cv–00004–RLV–DSC, 2013 WL 4494708, at *6 (W.D.N.C. Aug. 19, 2013) ("Defendant has cited no cases requiring bad faith or gross misjudgment in any other context, and the Court sees no reason to extend this augmented standard beyond the context of a plaintiff's challenge to a school's provision of a free and appropriate public education as required by IDEA."). Bad faith or gross misjudgment is not the applicable standard with regard to Plaintiff's claims for declaratory and injunctive relief in this case.

As for Plaintiff's claim for compensatory damages, Plaintiff alleges that Defendant continued to institutionalize Plaintiff after Plaintiff's counsel wrote to the Defendant that it was violating the ADA, indicating deliberate indifference to Plaintiff's federally protected rights. Compl. ¶ 45. Therefore, Plaintiff's request for compensatory damages should not be dismissed. *See Adams*, 834 F. Supp. 2d at 394.

## II. Plaintiff Need Not Rely on a Determination by a Public Entity's Treatment Professionals to Assert That Community Placement Is Appropriate

Defendant argues that Plaintiff's complaint should be dismissed for failure to allege that the County's medical professionals determined community placement is appropriate for Z.S. Def's Br. at 8-9. Defendant contends that a violation of the integration mandate requires an assessment by a public entity's treatment professional that the individual can appropriately be served in the community. *Id.* at 9. Defendant's argument reflects a misunderstanding of the law; evidence of appropriateness need not come from the County's own staff.

The *Olmstead* case did not present the question of whether a public entity's treatment professionals are the only professionals who can determine that community placement is appropriate. *See Olmstead*, 527 U.S. at 583-84. Since then, however, courts have ruled that a person asserting a violation of the integration mandate need not rely on a public entity's own treatment professionals to determine whether the person is appropriate to participate in a state's community service system. *See, e.g., United States v. Mississippi*, 400 F. Supp. 3d 546, 575-76 (S.D. Miss. 2019) (finding the appropriateness prong established where plaintiff's experts determined, and defendant's experts failed to refute, appropriateness); *Day v. District of Columbia*, 894 F. Supp. 2d 1, 23-24 (D.D.C. 2012) (recognizing that plaintiffs need not prove the public entity's treatment professionals have determined eligibility for community services and noting that "lower courts have universally rejected the absolutist interpretation proposed by

defendants”); *Disability Advocates, Inc. v. Paterson*, 653 F. Supp. 2d 184, 258-59 (E.D.N.Y. 2009) (finding that plaintiffs need not provide determinations from state treatment professionals to demonstrate that they are qualified for community placement and noting that holding otherwise would “eviscerate the integration mandate”), *vacated on other grounds sub nom. Disability Advocates, Inc. v. N.Y. Coal. for Quality Assisted Living, Inc.*, 675 F.3d 149, 162-63 (2d Cir. 2012); *Long v. Benson*, No. 4:08cv26-RH/WCS, 2008 WL 4571904, at *2 (N.D. Fla. Oct. 14, 2008) (noting that the right to receive services in the community would become illusory if the state could deny the right by refusing to acknowledge the appropriateness of community placement); *Joseph S. v. Hogan*, 561 F. Supp. 2d 280, 290-91 (E.D.N.Y. 2008) (rejecting the argument that the state’s treatment professionals must be the ones to make an appropriateness determination); *Frederick L. v. Dep’t of Pub. Welfare*, 157 F. Supp. 2d 509, 540 (E.D. Pa. 2001) (finding that states cannot avoid the integration mandate by failing to make recommendations for community placement).[4] Thus, it is well-settled that a plaintiff may state a violation of the integration mandate without relying on a public entity’s determination of appropriateness.

[4] Neither the Fourth Circuit nor district courts in this Circuit have reached this issue. *See, e.g.*, *Pashby v. Delia*, 709 F.3d 307, 334 (4th Cir. 2013); *Clinton L. v. Delia*, No. 1:10CV123, 2012 WL 5381488 (M.D.N.C. Oct. 31, 2012), at *4 (source of evidence of appropriateness was not at issue); *United States v. Virginia*, No. 3:12cv59–JAG, 2012 WL 13034148 (E.D. Va. June 5, 2012), at *5 (same ); *Pashby v. Cansler*, 279 F.R.D. 347, 355 (E.D.N.C. 2011) (plaintiffs’ appropriateness for the community was not at issue); *Marlo M. ex rel. Parris v. Cansler*, 679 F. Supp. 2d 635, 637-38 (E.D.N.C. 2010) (case involving individuals deemed eligible for community placement by State experts).

Like the courts that have considered this issue, the Department of Justice *Olmstead* Statement explains that "[a] reasonable, objective assessment by a public entity's treating professional is one, but only one, such avenue" to show that a more integrated setting is appropriate for an individual. DOJ *Olmstead* Statement, at Q & A No. 4. It further provides that "[a]n individual may rely on a variety of forms of evidence to establish that an integrated setting is appropriate," and that "the ADA and its regulations do not require an individual to have had a state treating professional make such a determination." *Id.* A determination of appropriateness from the public entity's treatment professionals is not required to allege a violation of the integration mandate.

Plaintiff here has alleged that options for placement in the community that could meet Z.S.'s needs are available. Compl. ¶ 18. Plaintiff need not allege that Defendant's treatment professionals deemed Z.S. appropriate for placement in an integrated community setting in order to state a claim.

### III. A Plaintiff Alleging That Access to an Existing Community Service Will Prevent Unnecessary Institutionalization Has Alleged a Plausible Reasonable Modification

Defendant's effort to challenge the reasonableness of Plaintiff's requested modification in a Motion to Dismiss should fail. A plaintiff's burden is only to allege a plausible reasonable modification to remedy the discrimination. *Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 507-08 (4th Cir. 2016). Plaintiff has done so here.

The Fourth Circuit has stated that a "public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary

to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." *Pashby*, 709 F.3d at 323 (quoting 28 C.F.R. § 35.130(b)(7)). The Fourth Circuit has noted that the burden of establishing the reasonableness of an accommodation is "not a heavy one and that it is enough for the plaintiff to suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits." *Lamone*, 813 F.3d at 507-08 (citing *Henrietta D.*, 331 F.3d at 280) (internal citation and quotation marks omitted).

Courts have found requests like that of Plaintiff, to access existing services which will prevent institutional placement, to be plausible reasonable modifications. *See, e.g.*, *Helen L. v. DiDario*, 46 F.3d 325, 329, 337-39 (3d Cir. 1995) (state could not defeat the plaintiff's claim where the state had waitlisted the plaintiff for existing services that would allow her to live in her home, instead of a nursing facility); *Mississippi*, 400 F. Supp. 3d at 576 (finding provision of community-based services reasonable where the plaintiff showed that the state "already ha[d] the framework for providing [community-based] services and [could] more fully utilize and expand that framework to make the services truly accessible"); *Michelle P. ex rel. Deisenroth v. Holsinger*, 356 F. Supp. 2d 763, 764, 770 (E.D. Ky. 2005) (plaintiffs stated a claim where they sought existing Medicaid services to avoid institutionalization); *Martin v. Taft*, 222 F. Supp. 2d 940, 974 (S.D. Ohio 2002) (plaintiffs who sought to participate in existing Medicaid waiver program "[did] not seek new programs," leading court to conclude that "whether

expansion of a program in this case constitutes a fundamental alteration is a matter that can be resolved only by a careful examination of all of the facts and circumstances in this case, and not on the basis of pleadings or assumptions”).

Further, courts have held that a change in the method of administering a program so as to avoid unnecessary segregation of people with disabilities constitutes a reasonable modification. *See, e.g., Dunakin v. Quigley*, 99 F. Supp. 3d 1297, 1319-20 (W.D. Wash. 2015) (nursing facility resident stated a claim under the ADA when he alleged defendants failed to conduct an evaluation that would enable him to access alternative community-based placement options); *Kathleen S. v. Dep't of Pub. Welfare of Pa.*, 10 F. Supp. 2d 460, 471 (E.D. Pa. 1998) (finding unlawful methods of administration at state institution caused eighty-eight people to be unnecessarily segregated in the hospital even though they were able to live in the community with appropriate supports).

Plaintiff alleges that provision of existing community-based services would prevent unnecessary institutional placement. Compl. ¶¶ 14, 18, 23-26, 43. Receipt of those services is a plausible reasonable modification. Specifically, Plaintiff alleges that children in child welfare custody can be placed in homes with Medicaid services such as Private Duty Nursing and the Community Alternatives Program for Children to meet their medical needs. *Id.* Z.S. was not offered those services and was instead placed in a segregated facility for people with intellectual and developmental disabilities. Compl. ¶¶ 16, 19, 24. Because the Plaintiff proposed a plausible reasonable modification, the Complaint should not be dismissed.

## Conclusion

For the foregoing reasons, the Court should deny Defendant's motion to dismiss the Complaint.

DATED: October 25, 2021

Respectfully submitted,

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

STEVEN H. ROSENBAUM
Chief
Special Litigation Section

DEENA FOX
Deputy Chief
Special Litigation Section

*/s/ Catherine Yoon*
CATHERINE YOON
CA Bar No. 269917
Trial Attorney
United States Department of Justice
Civil Rights Division
Special Litigation Section
950 Pennsylvania Avenue, N.W.
Washington, DC 20530
Tel: (202) 598-1590
Fax: (213) 894-7819
catherine.yoon@usdoj.gov

Attorneys for the United States

**IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| Z.S.,<br>Plaintiff,<br>v.<br>Durham County,<br>Defendant. | Civil Case No. 1:21-cv-663 |

**CERTIFICATE OF WORD COUNT**

I certify that this Brief complies with the word count limit set forth in L.R. 7.3(d). The number of words in this Brief, exclusive of the caption, signature lines, certificate of service, and any cover page or index, according to the word count feature of the word processing software used to prepare the Brief, does not exceed 6,250 words.

This the 25th day of October, 2021.

Respectfully submitted,

*/s/ Catherine Yoon*
CATHERINE YOON
CA Bar No. 269917
Trial Attorney
United States Department of Justice
Civil Rights Division
Special Litigation Section
950 Pennsylvania Avenue, N.W.
Washington, DC 20530
Tel: (202) 598-1590
Fax: (213) 894-7819
catherine.yoon@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| Z.S.,<br>Plaintiff,<br>v.<br>Durham County,<br>Defendant. | Civil Case No. 1:21-cv-663 |

**CERTIFICATE OF SERVICE**

I hereby certify that on October 25, 2021, I electronically filed the foregoing with the Clerk of Court using the ECF system, which sent notification of such filing to all counsel of record.

*/s/ Catherine Yoon*
CATHERINE YOON
CA Bar No. 269917
Trial Attorney
United States Department of Justice
Civil Rights Division
Special Litigation Section
950 Pennsylvania Avenue, N.W.
Washington, DC 20530
Tel: (202) 598-1590
Fax: (213) 894-7819
catherine.yoon@usdoj.gov