IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
Z.S.,                           )
                                )
        Plaintiff,              )
                                )
    v.                          )       1:21-cv-663
                                )
DURHAM COUNTY,                  )
                                )
        Defendant.              )
```

**ORDER**

This matter is before the court on the joint motion of Plaintiff Z.S., by and through his Guardian ad Litem, Dr. Jeffrey Holden, and Defendant Durham County, for judicial approval of their settlement of the minor plaintiff's claim. (Doc. 36.) This court held a hearing on January 11, 2023, to determine whether to approve the proposed settlement. After careful consideration of the full record, the court finds that the settlement in this case is fair, reasonable, and appropriate and the motion will be granted and the settlement approved.

Plaintiff is two years old and, because of several disabilities, is medically fragile. (Compl. (Doc. 1) ¶ 9.) Plaintiff was born at UNC Hospitals in April 2020 and remained there until May 2021. (Id. ¶¶ 9, 16.) Plaintiff has been "medically stable and . . . ready for discharge since at least November 10, 2020." (Id. ¶ 12.)

Defendant sought custody of Plaintiff in January 2021 and subsequently obtained custody while Plaintiff was still at UNC Hospitals. (Id. ¶¶ 10, 13, 15.) After obtaining custody, Defendant transferred Plaintiff to an "intermediate care facility for individuals with intellectual disabilities" known as Tar River. (Id. ¶ 16.) When Defendant has custody of a child, it can place them "in community-based settings including in a home with a parent(s), relative(s), nonrelative kin (an individual who has a substantial relationship to the child), a licensed foster home, or other home authorized by law to provide care." (Id. ¶ 14.)

Plaintiff alleges that since he has been in Defendant's custody, "there have been available options for placement in the community that, in conjunction with Medicaid-funded services, could meet [Plaintiff's] needs." (Id. ¶ 18.) For example, "North Carolina offers publicly-funded home and community-based services such as Private Duty Nursing services and the Community Alternatives Program for Children . . . to provide alternative[s] to institutional care for children with medical needs and permit them to live at home." (Id. ¶ 23 (footnote omitted).) Plaintiff alleges that Tar River "likely cannot provide adequate social-emotional caregiver-child interactions" because it "is staffed by paid shift workers." (Id. ¶ 22.)

Plaintiff also alleges that Defendant "has failed to obtain Medicaid or Medicaid waiver services that would provide [Plaintiff] medical care . . . in the community." (Id. ¶ 24.) "On information and belief, [Plaintiff] has relatives and nonrelative kin willing to accept [Plaintiff] for placement in their home with appropriate home and community-based services and supports to provide for his needs," and Defendant "places or has the ability to place children with disabilities in foster care homes." (Id. ¶¶ 25-26.)

Plaintiff sued Defendant for violating Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, et seq., and violating Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794, et seq. (Id. ¶¶ 30-61.) Following the entry of this court's order denying Defendant's motion to dismiss, (Doc. 23), the parties proceeded with discovery and mediation. (See Doc. 27; Text Order 5/20/2022.) On December 5, 2022, the parties reached a settlement in principle, subject to the approval of this court. (Doc. 37 at 2.) The terms of the settlement, generally described, are as follows: a payment to Plaintiff of $15,000.00, payment to Plaintiff's counsel of $5,000.00, and "updated protocols to better ensure that Defendant prioritizes and

- 3 -

Case 1:21-cv-00663-WO-LPA   Document 44   Filed 01/18/23   Page 3 of 8

facilitates home- and community-based placements for medically fragile children in its custody." (Id. at 2-3.)

In order to make a determination about the reasonableness of the settlement agreement, this court requested that the parties provide information as to the forecast of trial evidence and an assessment of the strengths and weaknesses of their claims and defenses. Most notably, it appears to this court that both the standard of "deliberate indifference" to Plaintiff's federally protected rights, as well as the speculative nature of Plaintiff's damages, are matters which have been reasonably addressed and considered in reaching the settlement terms.

As explained persuasively by another court in this district,

> "A successful plaintiff in a suit under Title II of the ADA or [Section] 504 . . . is generally entitled to a full panoply of legal and equitable remedies." Paulone v. City of Frederick, 787 F. Supp. 2d 360, 373 (D. Md. 2011) (internal quotation marks omitted). "But proving the failure to provide a means of effective communication, on its own, permits only injunctive relief." Silva v. Baptist Health S. Fla., Inc., 856 F.3d 824, 831 (11th Cir. 2017). "[C]ompensatory damages are available only upon proof of intentional discrimination or disparate treatment, rather than mere disparate impact." Paulone, 787 F. Supp. 2d at 373. "While the Fourth Circuit has not specifically addressed the standard required for proving intentional discrimination, the majority of circuits to have decided the issue have adopted a deliberate indifference standard, as have some district courts within the Fourth Circuit." Smith v. North Carolina Dep't of Safety, No. 1:18CV914, 2019 WL

3798457, at *3 (M.D.N.C. Aug. 13, 2019) (unpublished) (Schroeder, C.J.) (citing Green v. Central Midlands Reg'l Transit Auth., No. 3:17CV2667, 2019 WL 1765867, at *6 n.15, *9-10, *9 n.24 (D.S.C. Apr. 22, 2019) (unpublished), and Godbey v. Iredell Mem'l Hosp. Inc., No. 5:12CV4, 2013 WL 4494708, at *4-6 (W.D.N.C. Aug. 19, 2013) (unpublished)).

> In order to prove deliberate indifference, "a plaintiff must show that the defendant knew that harm to a federally protected right was substantially likely and failed to act on that likelihood." Silva, 856 F.3d at 841 (internal quotation marks omitted); see also Adams v. Montgomery Coll. (Rockville), 834 F. Supp. 2d 386, 394 (D. Md. 2011) (explaining that "compensatory damages are available for failure to accommodate a plaintiff if defendants acted knowingly, voluntarily, and deliberately, even if the violations resulted from mere thoughtlessness and indifference rather than because of any intent to deny [the p]laintiff's rights" (internal quotation marks omitted)).

Bone v. Univ. of N. Carolina Health Care Sys., No. 1:18CV994, 2022 WL 138644 at *61 (M.D.N.C. Jan. 14, 2022).

It appears to this court that proof of deliberate indifference would be difficult to resolve at summary judgment because of the issue of determining the likelihood of harm arising from Plaintiff's placement in institutional care, which is not alleged to be deficient in any way, as compared to the possibility of better care that would have been received through a more integrated setting in either the community or a home. Notwithstanding any factual complexity, the law in this area is

- 5 -

Case 1:21-cv-00663-WO-LPA   Document 44   Filed 01/18/23   Page 5 of 8

not settled, suggesting even further complexity. See Koon v. North Carolina, 50 F.4th 398, 404-05 (4th Cir. 2022).

Similarly, Plaintiff's compensatory damages are at best speculative. Proving them would require expert testimony on the effects of institutionalization on disabled individuals. Plaintiffs' counsel informed the court that, because few comparable cases have proceeded to trial, Plaintiff's potential recovery is uncertain. Furthermore, the difficulty in proving damages would be compounded by Z.S.'s youth and inability to communicate to an expert, much less a jury, the effects of his institutionalization at Tar River.

During the hearing, Plaintiff's counsel also candidly informed the court that, because Z.S. has been returned to his parents' custody, his claims for injunctive relief against Defendants are now moot. Defendant's counsel also explained that should the case proceed to trial, they would need to call several county employees to testify about the steps they took to place Z.S. in a community-based setting. This would impose costs on Defendant since its employees would be away from work and presumably collecting their normal salary while they testified.

Based on these disclosures from counsel, this court finds that a trial would involve substantial risks for both parties in

terms of their likely success on the merits and any potential damages award.

Separate from the $15,000 compensatory damages payment to Plaintiff, the settlement provides $5,000 in attorney's fees for Plaintiff's counsel. The parties have not submitted information this court may use to assess the propriety of this fee award. However, this court finds the fees are reasonable and will be approved based on Defendants' agreement to pay and the time and effort that this court is aware Plaintiffs' counsel invested in litigating the matter.

This court was not presented with substantial information regarding the specific "updated protocols" Defendant has agreed to undertake as part of this settlement. (Doc. 37 at 2-3.) Defendant's counsel explained they include changes to current practices to ensure community-based placements for medically fragile children are quickly contacted, reviewed, and appropriately compensated. Though specific policy changes were not described in detail, this court finds the modifications are fair and reasonable given the lack of objection mounted by Plaintiff's family, Plaintiff's Guardian ad Litem, and Plaintiff's counsel-who has previously zealously represented disabled clients in this court.

Considering these facts, this court finds that the settlement is fair, reasonable, and in the best interest of the minor Plaintiff. The court further finds that the settlement is the product of a fair, reasonable, and appropriate arms-length negotiation between actual adversaries. Additionally, this court finds that all parties had adequate opportunity to investigate and evaluate the claims at issue as well as the terms of the settlement, and all parties have done so with reasonable diligence and competence.

**IT IS THEREFORE ORDERED** that the Joint Motion for Approval of Minor Settlement, (Doc. 36), is **GRANTED,** and the funds may be dispersed as set forth therein.

This the 18th day of January, 2023.

/s/ William L. Osteen, Jr.
United States District Judge